# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| IN RE:<br><br>9 METERS BIOPHARMA, INC.,<br><br>DEBTOR | CASE NO. 23-01992-5-PWM<br><br>CHAPTER 7 |
|---|---|
| **MOTION TO ENFORCE SALE ORDER** ||

Helicore Bioventures I, Inc. ("Helicore") moves (this "Motion") for entry of an order enforcing this Court's Order entered on January 5, 2024 authorizing the sale of certain of estate assets to Helicore [Dkt. No. 152] (the "Helicore Sale Order"). In support of this Motion, Helicore states as follows:

## JURISDICTION AND VENUE

1. This Motion is filed by Helicore, the purchaser of certain assets from the Chapter 7 estate of 9 Meters Biopharma, Inc. (the "Debtor") pursuant to the terms of an Asset Purchase Agreement dated January 5, 2024 (the "Helicore APA") by and between Helicore and George F. Sanderson, in his capacity as the Chapter 7 Trustee ("Trustee" or "Seller") for the Debtor's estate, as approved by the United States Bankruptcy Court for the Eastern District of North Carolina (the "Court") in the Helicore Sale Order.

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Referral of Bankruptcy Matters to Bankruptcy Judges entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3. This Court also has jurisdiction over this Motion pursuant to the terms of the Helicore Sale Order, which provided as follows:

> The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order and the Purchase Agreement, including but not limited to the injunctions and limitations of liability set forth in this Order, (c) protect the Buyer against any Claims and Interests in or against the Debtor or the Purchased Assets of any kind or nature whatsoever attaching to the net cash proceeds of the Sale as provided herein including, without limitation, to enjoin the commencement or continuation of any action seeking to impose successor liability or bulk sale liability; (d) enter any orders under sections 105, 363 and 365 of the Bankruptcy Code with respect to the Purchased Assets and the Assigned Contracts; (e) decide any disputes concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Claims and Interests; (f) adjudicate any and all remaining issues concerning the Trustee's right and authority to assume and assign the Assigned Contracts and the rights and obligations of the Trustee and the Buyer with respect to such assignment and the existence of any default under any such Assigned Contract; (g) adjudicate any and all disputes concerning alleged pre-closing Claims and Interests in and to the Purchased Assets including without limitation the extent, validity, enforceability, priority, and nature of any and all such alleged Claims and Interests; (h) adjudicate any and all disputes relating to the Debtor's right, title, or interest in the Purchased Assets and the proceeds thereof; and (i) re-open the bankruptcy proceeding to determine any of the foregoing.

Dkt. No. 152 at 43.

4.  The statutory predicates for the relief requested include, but are not limited to, 11 U.S.C. §§ 363, 365 and 105.

## INTRODUCTION

This bankruptcy case has been pending for just over six months. One week after entry of the Helicore Sale Order, on January 12, 2024, MetroHealth Ventures LLC fka MHS Care-Innovation LLC ("MHS") issued a demand to Helicore (the "Demand"), a true and accurate copy of which is attached to this Motion at Exhibit 1. The Demand violates the injunctive relief provided

2

under the terms of the Helicore Sale Order, ignores prior orders of the Court, including, without limitation, the Bid Procedures Order (as defined below), includes an untimely assertion of a cure obligation alleged to be owed to MHS, and relies upon a meritless interpretation of the MHS/9 Meters License (as defined below). Helicore respectfully requests that this Court enforce the Helicore Sale Order by directing MHS to withdraw the Demand and to cease and desist further interference with Helicore's enjoyment of its rights under the terms of the Helicore APA and the Helicore Sale Order.

## BACKGROUND

5. The Debtor filed this Chapter 7 proceeding on July 17, 2023.

6. Upon the filing of this bankruptcy proceeding, Richard Sparkman was named as Chapter 7 Trustee for the bankruptcy estate of the Debtor.

7. Shortly thereafter, the Trustee, George F. Sanderson was substituted as the Chapter 7 Trustee.

8. The Trustee solicited expressions of interest in connection with his anticipated attempt to liquidate the assets of the Debtor.

9. Helicore, among others, expressed interest in the assets of the Debtor.

10. Specifically, Helicore expressed interest in the NM-136 and related assets of the Debtor and provided a formal nonbinding expression of interest on August 18, 2023 as the Trustee had requested.

11. After a period of negotiation, Helicore submitted an asset purchase agreement to the Trustee, which, after further arms-length negotiations, resulted in an agreement between the parties with respect to the purchase and sale of the NM-136 and related assets. The parties also agreed that Helicore would serve as the "stalking horse" bidder for those assets.

12. Accordingly, and pursuant to the terms of the asset purchase agreement, Helicore was presented to the court as the proposed stalking horse bidder for the NM-136 assets in the *Trustee's Motion for Entry of Orders (I) (A) Approving Bidding Procedures for Sale of Debtor's NM-136 Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and Designating Helicore Bioventures I, Inc. as a Stalking Horse Bidder, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) (A) Approving the Sale of the Debtor's NM-136 Assets Free and Clear of Liens, Claims, Interests, and Encumbrances After the Auction and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases*, filed on November 2, 2023 [Dkt. No. 84] (the "Bid Procedures Motion").

13. The hearing on the Bid Procedures Motion was scheduled for November 16, 2023.

14. Just prior to the hearing, Lobesity, LLC, a Delaware limited liability company ("Lobesity"), filed an objection to the Bid Procedures Motion, including to the approval of Helicore as the stalking horse bidder, asserting that another party might be interested in submitting a competing stalking horse bid [Dkt. No. 108] ("First Lobesity Objection").

15. The hearing scheduled for November 16, 2023 was therefore continued in open court until November 28, 2023.

16. In the interim, the Trustee and Incregen Therapeutics LLC ("Incregen") negotiated an Asset Purchase Agreement pursuant to which Incregen was substituted for Helicore as the stalking horse bidder at a slightly higher price for all of the Debtor's assets, and the Trustee filed an *Amendment to Trustee's Motion to Approve Bidding Procedures, et al., for Debtor's NM-136 Assets and Remaining Assets* [Dkt. No. 111], designating Incregen as proposed stalking horse

4

bidder.

17.     Despite being timely and properly served with the Bid Procedures Motion, *see* Dkt. No. 90, MHS did not file a written objection or make even an informal objection to the Bid Procedures Motion prior to the hearings on either November 16 or November 28, 2023, nor did MHS appear at such hearings.

18.     On November 29, 2023, the court entered an Order granting the Bid Procedures Motion [Dkt. No. 116] (the "Bid Procedures Order"), approving Incregen as the stalking horse bidder, approving the bidding procedures (the "Bidding Procedures"), and scheduling an auction (the "Auction") on December 18, 2023.  The Trustee timely filed and served that certain *Notice of Sale of the Purchased Assets, Bidding Procedures, Auction, Sale Hearing, and Other Related Deadlines* [Dkt. No. 121] on parties in interest, including MHS.

19.     MHS did not file a request that the Bid Procedures Order be reconsidered.

20.     The Bid Procedures Order required, among other things, the Trustee to provide notice to executory contract counterparties in connection with any executory contracts that could potentially be assumed and assigned to various winning bidders and to provide an opportunity for such counterparties to assert the amount necessary to cure any defaults under their respective contracts ("Cure Notice").

21.     The Trustee timely filed and served the Cure Notice on all such parties, including MHS [Dkt. No. 123].

22.     The deadline by which counterparties were required to respond to the Cure Notice was December 12, 2023.

23.     Numerous parties timely responded to the Cure Notice and the Trustee entered into negotiations with those parties to determine or agree to or stipulate to the correct cure amount for

5

such parties.

24. On December 14, 2023, Lobesity filed its opposition and reservation of rights [Dkt. No. 134] (the "Second Lobesity Objection"), asserting that certain cure amounts were owing to it under its contract with the Debtor (the "Lobesity APA"), pursuant to which Lobesity sold outright all of its right, title and interest under the MHS/9 Meters License (as defined below) to the Debtor. Lobesity also reserved its right to object to assignment of the MHS/9 Meters License to the extent that the alleged cure amounts under the Lobesity APA were not satisfied.

25. While the Second Lobesity Objection was lodged on Lobesity's own behalf, Lobesity also purported to assert rights on behalf of MHS, based upon Lobesity's assertion that MHS was its largest shareholder.

26. On the other hand, MHS did not timely or ever object to the Cure Notice, which reflected that no cure amount was due to MHS in connection with the assumption and assignment of its executory contract, an Amended and Restated Technology License Agreement dated July 14, 2021 (the "MHS/9 Meters License").

27. In reliance upon, among other things, both the responses and lack of responses of various contract counterparties, Helicore and other parties participated in the Auction for all of the assets of the Debtor on December 18, 2023.

28. At the conclusion of the Auction, among other things, Helicore was determined to be the highest and best bidder for the NM-136 and related assets, as more particularly described in the Helicore APA.

29. Pursuant to the Helicore APA and the Helicore Sale Order, the MHS/9 Meters License is an Assigned Contract that was assumed and assigned to Helicore. The Lobesity APA, on the other hand, is an Excluded Contract that was not assumed and assigned to Helicore.

30. On December 27, 2023, Lobesity filed yet another objection and reservation of rights [Dkt. No. 145] with respect to any potential assumption and assignment of the Lobesity APA and an objection to the sale ("Third Lobesity Objection," and together with the First Lobesity Objection and the Second Lobesity Objection, the "Lobesity Objections"). In the Third Lobesity Objection, Lobesity purported to assert that, among other things, (i) its consent was required to assign the Lobesity APA and the MHS/9 Meters License and that it had not received adequate assurance of future performance, and (ii) it had authority to object on behalf of MHS to the assignment of the MHS/9 Meters License. Lobesity further asserted that MHS's consent to assignment was required pursuant to the terms of the MHS/9 Meters License.

31. Once again, while the Third Lobesity Objection was expressly lodged only under Lobesity's name, Lobesity purported to assert rights on behalf of MHS, based upon Lobesity's assertion that MHS was its largest shareholder.

32. In the Third Lobesity Objection, Lobesity misquoted the language of the assignment provision of the MHS/9 Meters License as follows:

> Section 12.12 of the License Agreement provides that the "rights of Licensee or Licensor under this Agreement may be assigned, sublicensed, or transferred with the prior written consent of the other Party, which will not be unreasonably withheld. This Agreement shall apply to and bind any permitted successors or assigns of the Parties."

Dkt. No. 145 at 6.

33. On January 3, 2024, the Trustee filed a *Memorandum of Law in Reply to Oppositions and Reservations of Rights of Lobesity, LLC* [Dkt. No. 146] to the Second Lobesity Objection and the Third Lobesity Objection ("Trustee's Response"). In the Trustee's Response, the Trustee properly quoted the assignment language of the MHS/9 Meters License as follows:

> This Agreement, and a Party's rights and obligations hereunder, may only be assigned by a Party with the prior written consent of the other Party, which will

7

> not be unreasonably withheld, **provided that, notwithstanding anything to the contrary, Licensee shall be entitled to assign this Agreement, and its rights and obligations hereunder, without Licensor's consent** (i) to an affiliate of Licensee or **(ii) in connection with Licensee's sale of all or substantially all of its assets or business (or that portion thereof related to the subject matter hereof), merger, change of control, reorganization, consolidation, or similar transaction.** This Agreement shall apply to and bind any permitted successors or assigns of the Parties.

Dkt. No. 146 at 2 (emphasis added). Additionally, the Trustee's Response pointed out that the Third Lobesity Objection was moot to the extent it opposed assumption and assignment of the Lobesity APA, which Helicore expressly declined to designate as an Assigned Contract under the Helicore APA.

34. Lobesity appears to have purposefully deleted (without even bothering to show the deletion with ellipses) the critical provisions regarding permissible assignments of the MHS/9 Meters License.

35. One of the key underlying issues raised in the Third Lobesity Objection – that Lobesity has any rights with respect to the assumption and assignment of the underlying MHS/9 Meters License, including the right to demand that the alleged cure amounts under the Lobesity APA must be satisfied in order to assign the MHS/9 Meters License – was resolved with absolute clarity by the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") in the chapter 11 bankruptcy case of NVN Liquidation, Inc., et al., Case No. 23-10937. A transcript of the proceedings during which the issue was resolved is included as Exhibit 2 to this Motion.

36. That transcript was provided to Lobesity's counsel on the afternoon of January 4, 2023, on the eve of the January 5, 2024 sale hearing. Several hours after receipt of a copy of the attached transcript (and one day after the filing of the Trustee's Response), Lobesity withdrew all of the Objections.

8

37. Upon the evidentiary proffer of the Trustee and in the absence of any pending objection by any party, including, without limitation, Lobesity and MHS, the Court announced at the hearing on January 5, 2024 that it would approve the sale to Helicore and enter the Helicore Sale Order. The Helicore Sale Order was entered on January 5, 2024.

38. The sale by the Trustee to Helicore pursuant to the Helicore APA and the Helicore Sale Order closed on January 10, 2024.

39. On the evening of Friday, January 12, 2024, leading up to a holiday weekend, counsel on behalf of MHS issued the Demand via e-mail to undersigned counsel, failing to copy the Trustee or others on this Demand.

**THE DEMAND IS A DIRECT VIOLATION OF THIS COURT'S ORDERS**

40. The Demand is a direct attack on the terms of the Helicore Sale Order and the Bid Procedures Order.

41. The Demand asserts that MHS intends to fully enforce its rights to, among other things, Helicore's alleged obligations to (i) "satisfy certain Sales-Based Payments, Milestone Payments, and Upfront License Payments" under the Lobesity APA, and (ii) "provide [MHS] with the equity, rights, and privileges afforded under Section 4.1" of the MHS/9 Meters License. *See* Demand at 2.

42. The Demand improperly purports to require immediate action on the part of Helicore to both (i) perform under the Lobesity APA, a contract designated as an Excluded Contract under the Helicore APA and not assumed and assigned to Helicore, by remitting certain alleged royalty obligations provided for thereunder, and (ii) issue equity to MHS. As such, the Demand is an untimely and highly improper demand for a cure payment that is not owed. The approved Helicore APA and the Helicore Sale Order require no such cure payment be made to

9

MHS or Lobesity.

43. Helicore directs the Court to paragraph 33 of the Helicore Sale Order, which explicitly addresses and rejects the notion that the Lobesity APA was required to be assumed and assigned in conjunction with the assumption and assignment of the MHS/9 Meters License, and which further states that the cure amount owed under the MHS/9 Meters License is $0.00.

44. The Lobesity APA was not assumed and assigned to Helicore, was deemed rejected (to the extent it constitutes an executory contract at all) effective as of January 17, 2024, and any claim for royalties or other monetary amounts allegedly due and owing under the Lobesity APA constitutes nothing more than a pre-petition unsecured damages claim.

45. Additionally, paragraph 32 of the Helicore Sale Order provides that counterparties that failed to timely object to the Cure Notice, such as MHS, are "prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount [as set forth on the Cure Notice] at any time, and such Cure Amount, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assigned Contract to which it relates." Dkt. No. 152 at 39.

46. Moreover, the Demand relies upon a contrived reading of Section 4.1 of the MHS/9 Meters License, which merely provides that "Licensee acknowledges that Licensor was provided with certain equity, rights, and privileges set forth in the LLC Agreement." This language does not support the substance of the Demand in any event. Rather, it is simply an acknowledgment of the pre-existing relationship between Lobesity and MHS. The argument that such language requires some affirmative obligation to issue equity in favor of MHS by Helicore is frivolous and without any merit.

47. Section 4.1 contains no requirement and imposes no obligations on the assignee, Helicore. Indeed, the assignment provisions of the MHS/9 Meters License provide that the MHS/9

10

Meters License is freely assignable, without any other obligation upon the part of the assignee or assignor in this context.

48. Given the relationship between Lobesity and MHS (which Lobesity admitted in its filings with this Court), Lobesity's prior improper (and possibly deliberately false) quotations and last second withdrawal of its Objections, there is an evident strategy by MHS (or Lobesity) to "sandbag" the Trustee, the bidders and other parties that participated in the sale process in good faith and in accordance with the Court-ordered procedures, and this Court, with the hope of extracting some sort of compensation from Helicore after closing of the sale.

49. Helicore refuses to play that game. Indeed, the very reason the Bid Procedures Order requires and creates a deadline by which counterparties must come forward and assert claims is to ensure that any bidder for assets understands with clarity the obligations it will incur in connection with the assets it acquires and the contracts it chooses to assume.

50. Parties cannot be permitted to "lie in wait" and spring a claim of this extent after an auction is complete, the sale hearing has concluded, the sale order has been entered and the sale has closed. This is particularly so where, as here, MHS deliberately chose not to appear or object to the Bid Procedures Motion, Cure Notice, Bidding Procedures or the sale, and no party could reasonably interpret the MHS/9 Meters License to require the issuance of equity by an assignee of the licensee thereunder.

51. Finally, because of the extraordinary claims and uncertainty created by the Demand, the Demand has the potential to interfere with the payment of remaining cure obligations that are due as consequence of the Helicore Sale Order unless it is promptly withdrawn or the Court resolves this contested matter.

## RELIEF REQUESTED

Wherefore, Helicore respectfully requests that this Court enter an Order enforcing the Helicore Sale Order, declaring MHS's Demand to be null and void as a direct violation of the injunctions contained within the Helicore Sale Order, instructing MHS to cease and desist any and all efforts to undermine the Helicore Sale Order and the transfer of assets to Helicore pursuant to the Helicore Sale Order, and granting such other relief as the Court deems just and proper, including, without limitation, granting Helicore its fees and costs incurred in connection with this Motion.

Dated: January 19, 2024

**K&L GATES LLP**

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III
North Carolina State Bar No. 17451
Emily K. Steele
North Carolina State Bar No. 47925
Zechariah C. Etheridge
North Carolina State Bar No. 59494
K&L Gates LLP
301 Hillsborough Street, Suite 1200
Raleigh, North Carolina 27603
Telephone: (919) 743-7300

*Counsel for Helicore Bioventures I, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| IN RE:<br><br>9 METERS BIOPHARMA, INC.,<br><br>DEBTOR | CASE NO. 23-01992-5-PWM<br><br>CHAPTER 7 |
|---|---|
| **CERTIFICATE OF SERVICE** ||

**PLEASE TAKE NOTICE** that I, A. Lee Hogewood, III, of the law firm of K&L Gates LLP, certify that on January 19, 2024, I caused the foregoing *Motion to Enforce Sale Order* (the "Motion" to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties that have entered an appearance in this case.

The Motion was also served via Federal Express and Certified Mail, return receipt requested, and via electronic mail, as applicable, on the following parties:

Vorys, Sater, Seymour and Pease LLP
Attn: Kari B. Coniglio and
Marcel C. Duhamel
200 Public Square, Suite 1400
Cleveland, OH 44114
kbconiglio@vorys.com
mcduhamel@vorys.com

MetroHealth Ventures LLC
Attn: Sonja Rajki, Registered Agent
2500 Metrohealth Drive
Cleveland, Ohio 44109

MetroHealth Ventures LLC
Attn: Laura McBride, General Counsel
2500 MetroHealth Drive
Cleveland, OH 44109

Lobesity, LLC
c/o Corporation Service Company, Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

Thompson Hine LLP
Attn: John H. Bae, Esq.
300 Madison Avenue, 27th Floor
New York, NY 10017
john.bae@thompsonhine.com

Hendren, Redwine & Malone, PLLC
Attn: Rebecca F. Redwine
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
rredwine@hendrenmalone.com

The Motion was also served on the following parties electronically via CM/ECF:

Brian Behr, Esq.
*United States Bankruptcy Administrator*

John A. Northen
*Counsel for the Debtor*

George F. Sanderson
*Chapter 7 Trustee*

and electronically to all other parties receiving notices through the Court's CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: January 19, 2024

              **K&L GATES LLP**

              /s/ A. Lee Hogewood, III
              A. Lee Hogewood, III
              North Carolina State Bar No. 17451
              Emily K. Steele
              North Carolina State Bar No. 47925
              Zechariah C. Etheridge
              North Carolina State Bar No. 59494
              K&L Gates LLP
              301 Hillsborough Street, Suite 1200
              Raleigh, North Carolina 27603
              Telephone: (919) 743-7300

              *Counsel for Helicore Bioventures I, Inc.*