**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**9 METERS BIOPHARMA, INC.,**<br><br>**DEBTOR.** | **CASE NO. 23-01992-5-PWM**<br><br>**CHAPTER 7** |
| **REPLY TO OBJECTION OF METROHEALTH VENTURES LLC TO HELICORE<br>BIOVENTURES I, INC.'S MOTION TO ENFORCE SALE ORDER** | |

Helicore Bioventures I, Inc. ("Helicore") submits this reply (this "Reply") in support of the *Motion to Enforce Sale Order* filed by Helicore [Docket No. 158] (the "Motion") and in response to the *Objection of Metrohealth Ventures LLC to Helicore Bioventures I, Inc.'s Motion to Enforce Sale Order* [Docket No. 176] (the "Objection") filed by MetroHealth Ventures LLC f/k/a MHS Care-Innovation, LLC ("MHS).

**PRELIMINARY STATEMENT**

MHS's Objection asks this Court to not intervene in this dispute because it allegedly only involves a state-law interpretation of a contractual provision that imposes a "condition precedent" to MHS's obligations to perform under the MHS/9 Meters License. This Court should not accede to MHS's request. MHS's framing of the dispute belies the fact that what MHS (and its affiliate, Lobesity[1]) is trying to do is to circumvent this Court's Sale Order, which clearly bars MHS's assertion that section 4.1 of the MHS/9 Meters License—which contains an acknowledgment that MHS received equity from Lobesity in consideration for granting Lobesity the license to MHS's intellectual property—"expresses a condition precedent" that, if not satisfied by Helicore, renders

---

[1]    Capitalized terms used but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

BT:v

the MHS/9 Meters License "a nullity." MHS's argument, even if valid (which it is not), directly contravenes the Sale Order's prohibition on "raising or asserting against the Debtor or [Helicore], or the property of either of them, any . . . condition to assignment, arising under or related to the Assigned Contracts . . ." Sale Order ⁋ 30. For that reason alone, MHS's argument should be rejected.

Despite MHS's creative arguments, section 4.1 of the MHS/9 Meters License imposes no obligation on Helicore. That section simply states in its entirety: "Licensee acknowledges that Licensor *was provided* with certain equity, rights, and privileges set forth in the LLC Agreement." MHS/9 Meters License § 4.1 (emphasis added). Helicore believes that section 4.1 simply acknowledges a historical fact: that MHS had received certain equity interests in Lobesity pursuant to a separate agreement, and itself imposed no obligation on an assignee of the MHS/9 Meters License. MHS disagrees. But if MHS was correct that Helicore was required to issue equity to MHS in order to effectively assign the license, that requirement was an outstanding cure obligation that Helicore would have had to satisfy before the contract could be assigned to Helicore. Since the Cure Notice listed the cure amount of the MHS/9 Meters License as $0 and because the LLC Agreement was not proposed to be assumed and assigned with the MHS/9 Meters License, MHS would have had an obligation to object to the cure and transfer of the MHS/9 Meters License if it truly believed that section 4.1 bestowed a right to the equity of Helicore.

MHS chose not to object to the assumption and assignment of the MHS/9 Meters License on the ground that Helicore was required to provide equity to MHS. Rather, it decided to lie in wait and launch a collateral attack against Helicore in the hopes of obtaining compensation it knew it was not entitled to pursuant to the Sale Order. And it is worth noting that MHS's attack comes

BT:v

after its affiliate, Lobesity, attempted, and failed, to derail the assignment of the MHS/9 Meters License prior to the entry of the Sale Order. *See* Motion ⁋ 30.[2]

MHS also claims that this Court does not have jurisdiction to enforce its own orders by asserting that this dispute "has nothing to do with the sale, the estate, or bankruptcy law" Objection at 1. MHS characterizes this dispute as a "run-of-the-mill breach of contract issue[]." Objection at 6. To be sure, this is not a "run-of-the-mill breach of contract issue." This issue has everything to do with the "the sale, the estate, [and] bankruptcy law" as it is a transparent attempt to elude this Court's unambiguous free and clear sale order and approval of the assumption and assignment of the MHS/9 Meters License to Helicore. Regardless, and as set forth below, this Court indisputably has jurisdiction to rule on Helicore's motion to interpret and enforce the Court's own order.

## ARGUMENT

### I.    MHS Is Attempting to Circumvent the Court's Sale Order

#### A.    MHS Is Attempting to Circumvent the Free and Clear Sale of the Debtor's Assets to Helicore in Direct Violation of the Terms of the Sale Order

On January 5, 2024, this Court entered the Sale Order approving the sale of certain of the Debtor's assets to Helicore "free and clear of all Claims and Interests . . . ." Sale Order ⁋ 7. The sale closed on January 10, 2024. Pursuant to the Sale Order, the sale to Helicore was "free and clear of all Claims[3] and Interests" as "[t]he conditions of section 363(f) of the Bankruptcy Code

---

[2]   In fact, according to the objection filed by Lobesity, MHS *did* object. The objection filed by Lobesity purported to assert claims on behalf of itself and MHS. *See* Docket No. 145 (objection of "Lobesity, LLC . . . on its own behalf and on behalf of MHS Care-Innovation LLC" to Trustee's notice of winning bid and to the assumption and assignment of the MHS/9 Meter License Agreement). MHS's failure to raise its alleged entitlement to equity in connection with this objection is another bar to MHS's arguments.

[3]   Paragraph T of the Sale Order defines Claims and Interests as "liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising any time prior to the Closing (collectively, the "Liens"), and (ii) all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale or other title retention agreements and other similar

BT:v

have been satisfied." Sale Order ⁋ 8. Importantly, the defined term "Claims" includes the definition of "claim" as defined in the Bankruptcy Code as "a right to payment, whether or not such right has been reduced to judgment . . . ." 11 U.S.C. § 105(5). In addition, the Sale Order provides that upon assignment of a contract and payment of any cure that is owed, "no *default or other obligations arising prior to the Closing* shall exist under any Assigned Contract, and each Contract Counterparty to an Assigned Contract is forever barred and estopped from (a) declaring a default by the Debtor or [Helicore] under such Assigned Contract, (b) raising or asserting against the Debtor or [Helicore], or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts . . ." Sale Order ⁋ 30 (emphasis added).

Section 363(f) of the Bankruptcy Code states that the "trustee may sell property free and clear of *any interest* in such property . . . ." 11 U.S.C. § 363(f) (emphasis added"). "The term any interest is intended to refer to any obligations that are connected to, or arise from, the property being sold." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (internal quotations omitted); *see also In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir. 1996) (holding that

---

impositions, imperfections or restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, defenses, credits, allowances, options, limitations, action, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the bankruptcy proceeding, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (x) that purport to give to any party a right or option to effect a setoff against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, any of the Trustee's, the Bankruptcy Estate's, or the Buyer's interests in the Purchased Assets, or any similar rights, if any, or (y) in respect of taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (the items in this clause (ii), collectively, the "Claims", and together with the Liens and other interests of any kind or nature whatsoever, the "Claims and Interests."

-4-

BT:v

a relationship between a claim and the use of the sold assets creates an interest under section 363(f)).

Under applicable case law and the language of the Sale Order, it is clear that, even if, *arguendo*, MHS has an equity interest that attaches to the MHS/9 Meters License (which it does not), the MHS/9 Meter License was sold free and clear of such interest. There is no question that MHS was on notice of the fact that the proposed sale to Helicore was a "free and clear" sale pursuant to section 363(f) of the Bankruptcy Code. MHS received notice of the Bid Procedures Motion, which described the proposed "free and clear" sale. *See* Docket No. 84, 90. Additionally, Lobesity, an affiliate of MHS, filed no less than three (3) objections related the Bid Procedures Motion [Docket No. 108], purportedly owed cure amounts related to the MHS/9 Meters License [Docket No. 134] and potential assumption and assignment of the Lobesity APA [Docket No. 145]. *See* Motion ¶¶ 14, 24, 30, 31. Indeed, two of those objections [Docket Nos. 134 and 145] were filed by Lobesity "on its own behalf and on behalf of MHS Care-Innovation LLC." Accordingly, there can be no doubt that MHS was on notice but chose not to make its own formal or informal objection to the assumption and assignment of the MHS/9 Meters License. If MHS believed that it had an "interest" in the Debtor's assets pursuant to the MHS/9 Meters License, the proper mechanism of enforcement would have been to object to the sale, file a cure objection or seek adequate protection of its interests in MHS/9 Meters License. But, at best, MHS chose to do nothing; at worst, it filed objections via its affiliate Lobesity and failed to prosecute those objections. Instead, MHS waited for the sale to close before sending a Demand Letter in an illegal attempt to assert an alleged cure amount—which, in reality, is merely an acknowledgment of a pre-existing relationship between the original counterparties to the MHS/9 Meters License—that the Sale Order bars MHS from asserting. The Demand Letter was in direct contravention of the

-5-

Sale Order as any "default or other obligation" that MHS believed existed pursuant to the MHS/9 Meters License is now extinguished pursuant to the Sale Order. *See* Sale Order ¶ 30.[4] *See also id.* ¶¶ 20-21. Further, MHS is now barred from pursuing such "default or other obligation" that arose prior to the closing of the sale and is estopped from asserting any "condition to assignment" arising under the MHS/9 Meters License. Sale Order ¶ 30.

### B.    MHS Is Actually Seeking a Barred Cure Claim

Helicore disputes that section 4.1 of the MHS/9 Meters License provides an ongoing obligation of an assignee to provide equity and other rights to MHS. Assuming *arguendo* that it reflects such an obligation, the appropriate mechanism to enforce this right would have been for MHS to file a cure objection advising Helicore as the prospective assignee, of the alleged obligation under section 4.1 of the MHS/9 Meters License. As described above, it is undisputed that MHS received notice that the MHS/9 Meters License could be assumed and assigned, but MHS never asserted a cure claim with respect to its alleged right to receive equity pursuant to section 4.1 of the MHS/9 Meters License.

Section 365(b) of the Bankruptcy Code provides in pertinent part that:

> (1) if there has been a default in an executory contract . . . the trustee may not assume such contract [] unless, at the time of assumption of such contract [], the trustee — (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . (B) compensates, or provides adequate assurance that the trustee will promptly compensate . . . for any

---

[4]    Paragraph 30 of the Sale Order states "[u]pon the Trustee's assignment of the Assigned Contracts to the Buyer under the provisions of this Order and the Buyer's payment of the Cure Amounts pursuant to the terms of the Purchase Agreement (including Section 2.4 thereto) no default or other obligations arising prior to the Closing shall exist under any Assigned Contract, and each Contract Counterparty to an Assigned Contract is forever barred and estopped from (a) declaring a default by the Debtor or the Buyer under such Assigned Contract, (b) raising or asserting against the Debtor or the Buyer (or any Buyer Party), or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Buyer or any Buyer Party as a result of the Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, in each case in connection with the Sale. Each Contract Counterparty is also forever barred and estopped from raising or asserting against the Buyer or any Buyer Party any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the closing of the Sale, except for any amounts that are Assumed Liabilities.

BT:v

> actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract [].

11 U.S.C. § 365(b).

Having failed to assert the alleged cure claim until after the Sale Order was entered (indeed, MHS did not send the Demand Letter until after closing), MHS's cure claim is untimely and is now barred. *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir.2002), cert. denied, 538 U.S. 962 (2003) (failure to object constitutes consent if there was adequate notice); *Matter of Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that interested parties had the "opportunity to object or seek clarification either by written submission or orally at the hearing. As the Township did not offer any objection, it may be deemed to have consented to the sale"); *see also* Sale Order ⁋ 32 ("[t]o the extent a Contract Counterparty to an Assigned Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assigned Contract to which it relates.").

Realizing it failed to timely raise the cure claim, MHS denies that it is asserting a cure claim.[5]  Rather, MHS creatively argues that section 4.1 of the MHS/9 Meters License provides a "condition precedent" that must be satisfied prior to assignment.  *See generally* Objection at 10-12.  That argument, even if valid (which it is not), directly contravenes the Sale Order's prohibition on "raising or asserting against the Debtor or [Helicore], or the property of either of them, any . . .

---

[5] *See* Objection at p. 1 ("MHS seeks no "cure" or payment of past-due amounts at the time Helicore assumed the Amended and Restated Technology License Agreement granted by MHS to Lobesity, LLC . . . .").

BT:v

*condition to assignment*, arising under or related to the Assigned Contracts . . ." Sale Order ⁋ 30 (emphasis added). For that reason alone, MHS's argument should be rejected.

### C. **Alternatively, MHS Is Seeking to Enforce an Unassumed Contract**

MHS's reading of the MHS/9 Meters License requires the interpretation and enforcement of provisions that do not appear in that license; rather, they appear in the LLC Agreement. While MHS argues that the MHS/9 Meters License creates an obligation for Helicore to provide MHS with equity, that contention cannot be correct—section 4.1 of the MHS/9 Meters License does not contain any of the necessary terms for that to be true. For example, it does not contain any term providing the amount of equity which must be provided or under what terms is provided. Instead, the MHS/9 Meters License acknowledges equity rights and privileges it received in an entirely different agreement—the LLC Agreement.[6] Neither of these documents purports to integrate the other.

Thus, any assertion that section 4.1 of the MHS/9 Meters License has been violated or otherwise not satisfied can only be supported through reference to the terms of the LLC Agreement. But the LLC Agreement was not assumed and assigned as part of the Sale. And to the extent that MHS is attempting to read section 4.1 to create an obligation by the licensee under the MHS/9 Meters License to comply with the LLC Agreement, such a reading would require an argument that the two agreements are integrated. However, "contracts that comprise an integrated agreement must either be assumed or rejected, since they make up one contract." *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006, aff'd, 2008 WL 522516 (D. Del. Feb. 27, 2008); *see Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.)*, 284 B.R. 541, 547-48 (Bankr. D. Del.

---

[6]    The MHS/9 Meters License simply defines the "LLC Agreement" as "the Limited Liability Company Agreement of Licensee, dated as of the Original Effective Date, as the same may be amended and/or restated from time to time." MHS/9 Meters License ⁋ 1.10.

-8-

BT:v

2002), aff'd, 303 B.R. 574 (D. Del. 2003). But section 12.15 of the MHS/9 Meters License Agreement states "[t]his [agreement] contains the entire understanding of the parties as to its subject matter . . . ." MHS/9 Meters License § 12.15. There is no ambiguity in this section and the intent of the parties is clear. There was no intent (nor is there any language) to integrate the MHS/9 Meters License with the LLC Agreement. To be sure, upon information and belief, when the Debtor purchased the MHS/9 Meters License, it did so through a separate asset purchase agreement. And as with the argument concerning cure above, because MHS did not raise this argument in connection with the transfer of the MHS/9 Meters License, MHS has waived any right to do so at this point as the argument directly contravenes the Sale Order's prohibition on "raising or asserting against the Debtor or [Helicore], or the property of either of them, any . . . *condition to assignment, arising under or related to the Assigned Contracts* . . ." Sale Order ¶ 30 (emphasis added).

## II.    **MHS's State Law Arguments Also Fail**

### A.    **Section 4.1 of the MHS/9 Meters License Is Not a Condition Precedent**

Turning to the substantive state law arguments made by MHS to avoid the effect of this Court's Sale Order, one can see that they also fail as a matter of law. First, under Ohio state contract law, a condition precedent is "a condition that must be performed before obligations in a contract become effective." *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 16 N.E.3d 645, 650 (Ohio 2014). MHS does not, because it cannot, argue that the MHS/9 Meters License was not effective before assumption by Helicore.

Moreover, courts in Ohio give effect to the intent of the parties. *Skivolocki v. E. Ohio Gas Co.*, 313 N.E.2d 374, 375 (Ohio 1974). "When confronted with an issue about contract interpretation, the role of the trial court is to give effect to the intent of the parties." *Kaufman v.*

BT:v

*Byers*, 823 N.E.2d 530, 535 (Ohio Ct. App. 2004). Courts "will look to the plain and ordinary meaning of the language used in the contract . . . ." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). "When language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* Section 4.1 of the MHS/9 Meters License states "License Costs. Licensee acknowledges that Licensor was provided with certain equity, rights, and privileges set forth in the LLC Agreement." MHS/9 Meters License § 4.1. Section 4.1 and the intent of the parties, MHS and Lobesity, are clear. There is no language let alone express language that section 4.1 is a condition precedent, nor do those words express any future obligation to provide anything further to MHS.

Even further, Ohio law disfavors conditions precedent in contracts and the "courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary." *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.*, 965 N.E.2d 1007, 1013-14 (Ohio Ct. App. 2011). Using the term "condition precedent" unequivocally shows the intent of the parties. *Transtar Elec.*, 16 N.E.3d at 647. Absent an explicit intent of the parties to establish a condition precedent, "courts will not interpret a contractual provision in that manner." *Evans*, 965 N.E.2d at 1014. Again, there are no words, let alone express words, that the Court could use to find an explicit intent of the parties to establish a condition precedent.

Importantly, even if this Court were to hold that section 4.1 of the MHS/9 Meters License was a condition precedent (it is not), this does not help MHS. If section 4.1 was a condition precedent, as set forth above, this would have created an obligation that MHS was required to assert before the MHS/9 Meters License could be assumed and assigned. MHS did not object to the assumption and assignment of the MHS/9 Meters License on such grounds and is now barred by the Sale Order, which prohibits "raising or asserting against the Debtor or [Helicore], or the

property of either of them, any . . . *condition to assignment, arising under or related to the Assigned Contracts . . .*" Sale Order ⁋ 30 (emphasis added).

**B.    Section 4.1 Does Not Impose a Performance Obligation on Helicore**

MHS's other state law claim is equally unavailing. This argument is predicated on the idea that if section 4.1 of the MHS/9 Meters License is not a condition precedent, it "set[s] out a performance obligation that Helicore has now breached." Objection at 13. MHS contends that the Court need only substitute "Helicore" for "Licensee" and this "makes clear that section 4.1 requires Helicore to perform." *Id.* Aside from the fact that the Sale Order states that "no *default or other obligations arising prior to the Closing* shall exist under any Assigned Contract, and each Contract Counterparty to an Assigned Contract is forever barred and estopped from (a) declaring a default by the Debtor or [Helicore]", Sale Order ⁋ 30, simply making that substitution leads to section 4.1 stating "[Helicore] acknowledges that MHS was provided with certain equity, rights, and privileges set forth in the LLC Agreement." "LLC Agreement" is a defined term which means "the Limited Liability Company Agreement of [Lobesity], dated as of [July 28, 2015], as the same may be amended and/or restated from time to time." MHS/9 Meters License ⁋ 1.10.

When giving effect to every word in the section, it twists logic to conclude that this imposes a performance obligation on the part of Helicore to provide the same equity, rights, and privileges that were required from *and already provided by* Lobesity. A more accurate reading would be that Helicore acknowledges that MHS was provided with rights under the Lobesity LLC Agreement and nothing more. To read it any other way is disingenuous. Accordingly, section 4.1 of the MHS/9 Meters License does not impose a performance obligation on Helicore.

Further undermining MHS's theory that section 4.1 of the MHS/9Meters License imposes a performance obligation on Helicore is the fact that when the Debtor purchased the MHS/9 Meters

-11-

BT:v

License from Lobesity, the Debtor did not provide any equity to MHS.  Rather, the Debtor provided certain payments and equity to Lobesity pursuant to the asset purchase agreement.  By MHS's logic, MHS should have received equity and other rights from the Debtor when the Debtor purchased the MHS/9 Meter License.  But MHS did not.  MHS understood then, as did the other parties to that transaction, that section 4.1 was not a performance obligation.  Rather, all parties, including MHS, understood this section to be merely acknowledging the pre-existing relationship between Lobesity and MHS.  If MHS believed otherwise, it would have raised the performance obligation argument then and demanded equity from the Debtor.

**III.    Finally, Jurisdiction Exists for This Court to Decide this Dispute**

**A.    This Court Has Jurisdiction as the Matter "Arises In" the
9 Meters Biopharma, Inc. Case**

MHS attempts to avoid a reckoning stemming from its defiance of this Court's Sale Order by claiming that this Court has no subject matter jurisdiction to rule on the Motion.  This contention, however, fails as a matter of law.  Section 1334(b) confers on the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  "A proceeding or claim arising in Title 11 is one that is not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (internal quotations omitted).  As such, "a claim arises in a bankruptcy proceeding if it 'would have no practical existence *but* for the bankruptcy.'"  *Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 511 (S.D.N.Y. 2015) (emphasis in original) (quoting *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010), *cert. denied*, 562 U.S. 1149 (2011)).  In determining "arising in" jurisdiction, "the determinative issue is whether claims that appear to be

-12-

BT:v

based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker*, 613 F.3d at 350.

In addition, "claims arising from postpetition contracts with the estate or bankruptcy trustee 'arise in' the case for purposes of 28 U.S.C. § 1334(b)." *In re Blackjewel L.L.C.*, 2022 WL 17184810, at *4 (Bankr. S.D.W. Va. November 23, 2022). Further, "core proceedings are those that arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011); *see also* 28 U.S.C. § 157(b)(2)(A), (O) (core proceedings include "matters concerning the administration of the estate" and 'other proceedings affecting the liquidation of assets of the estate.").

Finally, "matters requiring [a] bankruptcy court[] to interpret [its] own orders arise in the bankruptcy case." *In re Nicole Energy Servs, Inc.*, 2015 WL 1321567, at *2 (Bankr. S.D. Ohio January 21, 2015); *see also Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 853 (Bankr. S.D. Ohio 2011) ("An example of a proceeding arising in a bankruptcy case is a motion requesting that a bankruptcy court interpret or enforce its own order."); *NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 317 B.R. 260, 269 (Bankr. S.D.N.Y. 2004) ("[C]ases in this district have stated that a claim 'arises in' bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy case because it has no existence outside of bankruptcy. Other decisions (including two at the court of appeals level) have stated it more broadly—that a proceeding 'arises in' a bankruptcy case when it would have no practical existence but for the bankruptcy. Efforts to *implement, gain the fruits of, and to enforce orders of the bankruptcy court are all in this category*.") (footnotes omitted) (emphasis added); *In re SS Body Armor I, Inc.*, 2012 WL 2315177, at *5 (Bankr. D. Del. June 7, 2021) ("As a general rule, courts have the authority to interpret their own orders . . . .") (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("the only

BT:v

question left is whether the [b]ankruptcy [c]ourt had subject matter jurisdiction to enter the [clarifying] [o]rder. The answer here is easy . . . the [b]ankruptcy [c]ourt plainly had jurisdiction to interpret and enforce its own prior orders.").

Further, even when the disputed issue involves a matter of an alleged breach of contract under state law involving non-debtors, this Court still has "arising in" core subject matter jurisdiction when interpreting its own order. *In re General Growth Props., Inc.*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011) (holding that a state court action between two purported non-debtors "is a proceeding falling within this [c]ourt's core jurisdiction because it implicates the enforcement or construction of a bankruptcy court order") (internal quotations omitted); *see also In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (holding that the court had core subject matter jurisdiction to interpret and enforce its sale order even though the dispute was between two non-debtors). Even if "the outcome of the sale order interpretation would have no effect on the debtor's estate" this Court would still have subject matter jurisdiction. *In re Motors Liquidation Co.*, 514 B.R. 377, 382 (Bankr. S.D.N.Y. 2014).

Here, the Court has "arising in" jurisdiction because it will need to interpret and enforce the Sale Order and adjudicate the respective rights of the parties under the Sale Order which includes the asset purchase agreement (the "APA") entered into by the Chapter 7 Trustee and Helicore. The Court will also need to determine if the Sale Order extinguished any rights that MHS might have regarding alleged obligations of Helicore with respect to the MHS/9 Meters License. Further, the Helicore claims are borne out of and created by a specific instrument executed with this Court *i.e.* the Sale Order and the attached APA, which provides for arising in jurisdiction. *See In re Parker*, 581 B.R. 468, 478 (Bankr. E.D.N.C. 2018) (holding "the claims

-14-

BT:v

were borne out of and created by a specific instrument executed in connection with the bankruptcy. Simply put, the claims would not exist had the [debtors] not filed for relief under chapter 11.").

In addition, this Court not only has the inherent authority to interpret and enforce its own orders, as in *Travelers*, this Court also explicitly retained jurisdiction in the Sale Order to do so. Sale Order ¶ 43. Further, any rights that MHS believes it has were borne out of the Debtor's bankruptcy case and the previously entered Sale Order, and would not have come into existence but for the Debtor's bankruptcy case. Accordingly, this Court has arising in jurisdiction to decide the Motion.

**B.    In the Alternative, this Court Has "Related To" Jurisdiction**

Even if this Court did not have "arising in" jurisdiction rule on the Motion, it has "related to" jurisdiction over this matter. The Fourth Circuit's test for determining "related to" jurisdiction "is whether the outcome of that proceeding could conceivably have any effect of the estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997). Bankruptcy court jurisdiction will exist so long as it is possible that a proceeding may impact the debtor. "Certainty, or even likelihood [of an impact on the debtor] is not a requirement." 1 *Collier on Bankruptcy* ¶3.01[3][e][2] (16th ed. 2023). The civil case need not be against the debtor or their property to have "related to" jurisdiction. *Celotex*, 124 F.3d at 625. "An example of a civil case related to a bankruptcy case [is a] suit[] between third parties which have an effect on the bankruptcy estate." *Id.* (citing *Celotex v. Edwards*, 514 U.S. 300 (1995)) (internal citations omitted). Finally, "related to" jurisdiction is very broad and it encompasses nearly every matter directly or indirectly related to the bankruptcy. *See In re Murphy*, 569 B.R. 402, 415 (Bankr. E.D. N.C. 2017) (citing *Mann v. Alexander Dawson (In re Mann)*, 907 F.2d 923, 926 n.4 (9th Cir. 1990); *see also Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d

BT:v

100, 105 (1st Cir. 2005) (noting that Congress deliberately allowed cession of wide-ranging related to jurisdiction to the bankruptcy courts "to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates.").

Just because the dispute is between two non-debtors does not mean that "related to" jurisdiction does not exist. For example, in one case, a New York bankruptcy court held that it had "related to" jurisdiction with respect to a state law breach of contract claim between a purchaser of the debtor's assets and the potential financer for that purchase. *See In re Patriot Coal (Black Diamond Commercial Finance, LLC v. Virginia Conservation Legacy Fund, Inc., et al.,)*, 2016 WL 5360950, at *2 (Bankr. E.D. Va. Sept. 23, 2016). After the New York court transferred the dispute to the Eastern District of Virginia, that court agreed with the New York bankruptcy court's decision and further stated that "this [c]ourt supplements the analysis of the New York Bankruptcy Court by noting that the Fourth Circuit's approach to subject matter jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) does not require a different result." *Id.*, at *2 n.4.

Additionally, the cases to which MHS cites to argue that the "court lacked jurisdiction when 'the dispute involves assets sold out of the bankruptcy estate and is between non-debtor parties'" are inapposite and actually support the exercise of "related to" jurisdiction here. Objection at 9-10 (citing *In re Best Mfg. Group LLC*, No. 06-17414(DHS), 2007 Bankr. LEXIS 3239, at *16 (Bankr. D.N.J. Sept. 17, 2007). In *Best Mfg*, the sentence immediately following the one quoted by MHS in its Objection is what differentiates that case (and the other cases cited by MHS) from the circumstances here. In the next sentence, the court goes on to say that it lacks jurisdiction because there isn't an effect on the bankruptcy estate. *See id.* The case is not saying that the court cannot have "related to" jurisdiction when it involves non-debtor parties and assets sold out of a bankruptcy. It simply found that there was no effect on the bankruptcy estate.

-16-

BT:v

There can be no doubt that there is a real potential for a significant impact on the Trustee and the money available for distributions by the Trustee.  As stated above, Helicore contends that section 4.1 of the MHS/9 Meters License is merely an acknowledgement of the pre-existing relationship between Lobesity and MHS and, therefore, there is nothing for Helicore to cure or to compensate MHS for.  If a court were to hold that Helicore is required under section 4.1 of the MHS/9 Meters License to provide compensation to MHS, Helicore could then seek reimbursement from the Trustee pursuant to the APA because the Trustee is required to pay any cure amounts exceeding the Cure Cap (as defined in the APA).  This would have a significant impact on the funds available for distribution to creditors.

As such, the cases cited by MHS are inapposite to the facts present here and this Court does have "related to" jurisdiction.

## **CONCLUSION**

For all the reasons stated above, this Court should grant the Motion, hold that the Demand Letter is null and void and violative of the Sale Order, hold that Helicore has no obligation under section 4.1 and grant such other and further relief as the Court deems just and proper, including, without limitation, granting Helicore its fees and costs incurred in connection with the Motion.

This the 22nd day of March, 2024.

/s/ Derek C. Abbott
Derek C. Abbott
MORRIS NICHOLS ARSHT & TUNNELL
P.O. Box 1347
Wilmington, DE 19899-1347
Phone Number: 302-351-9357
Email Address: dabbott@morrisnichols.com
State Bar No.: Delaware 3376

/s/Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
BLANCO TACKABERY

-17-

& MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
E-mail: asr@blancolaw.com

*Contested Matter Local Counsel for Helicore
Bioventures I, Inc.*

BT:v

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| 9 METERS BIOPHARMA, INC., | § | Case No. 23- 01992-5-PWM |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |

## CERTIFICATE OF SERVICE

------------------------------------------------------------------------------------------------------

    This is to certify that a copy of the **REPLY TO OBJECTION OF METROHEALTH VENTURES LLC TO HELICORE BIOVENTURES I, INC.'S MOTION TO ENFORCE SALE ORDER** was served via the CM/ECF System when filed as applicable and/or by depositing the same in a post-paid wrapper, addressed to the following parties as shown below, in an official depository of the United States Postal Service, in the matter prescribed by law:

Vorys, Sater, Seymour and Pease LLP
Attn: Kari B. Coniglio and
Marcel C. Duhamel
200 Public Square, Suite 1400
Cleveland, OH 44114

MetroHealth Ventures LLC
Attn: Sonja Rajki, Registered Agent
2500 Metrohealth Drive
Cleveland, OH 44109

MetroHealth Ventures LLC
Attn: Laura McBride, General Counsel
2500 MetroHealth Drive
Cleveland, OH 44109

Lobesity, LLC
c/o Corporation Service Company,
Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

Thompson Hine LLP
Attn: John H. Bae, Esq.
300 Madison Avenue, 27th Floor
New York, NY 10017

Hendren, Redwine & Malone, PLLC
Attn: Rebecca F. Redwine
4600 Marriott Drive, Suite 150
Raleigh, NC 27612

-19-

BT:v

Danny Bradford
Bradford Law Offices
455 Swiftside Drive, Suite 106
Cary, NC 27518

Richard A. Prosser
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601

Matthew P. Weiner
Poyner Spruill LLP
P.O. Box 1801
Raleigh, NC 27602

Joanne Wu-White
Poyner Spruill LLP
301 S. College Street, Suite 2900
Charlotte, NC 28202

John R. Knapp, Jr.
Miller Nash LLP
605 5th Ave. S, Ste. 900
Seattle, WA 98104

William H. Kroll
P.O. Box 911
Raleigh, NC 27602

Cindy G. Oliver
Longleaf Law Partners
4509 Creedmoor Road, Suite 302
Raleigh, NC 27612

Louis J. Cisz, III, Esq.
Nixon Peabody LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111

William P. Janvier
Stevens, Martin Vaugh & Tadych,
PLLC
2225 W. Millbrook Road
Raleigh, NC 27612

Emily K. Steele
K&L Gates LLP
301 Hillsborough Street, Suite 1200
Raleigh, NC 27603

Klestadt Winters Jureller Southard &
Stevens, LLP
Sean C. Southard
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, NY 10036

Derek C. Abbott
Morris Nichols Arsht & Tunnell
P.O. Box  1347
Wilmington, DE 19899

John A. Northen
*Via CM/ECF only*

George F. Sanderson
*Via CM/ECF only*

Brian Behr, Esq.
*Via CM/ECF only*

This the 22nd day of March, 2024.

BT:v

/s/ Ashley S. Rusher

Ashley S. Rusher (NCSB #14296)
BLANCO TACKABERY & MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
Email: asr@blancolaw.com

*Contested Matter Counsel for Helicore
Bioventures I, Inc.*

BT:v